# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

US INCOME PARTNERS, LLC

    *Plaintiff*,

vs.

SALERICA INVESTMENTS, INC. and
ZIMMERMAN, KISER, & SUTCLIFFE, P.A.

    *Defendants*.

**Case No. 6:20-cv-00904**

## COMPLAINT

Plaintiff US Income Partners, LLC ("US Income Partners"), by and through its undersigned counsel, and as for its Complaint against Defendants Salerica Investments, Inc. ("Salerica") and Zimmerman, Kiser & Sutcliffe, P.A. ("Zimmerman"), alleges as follows:

## NATURE OF THE ACTION

1.    This dispute arises from Salerica's baseless threats to take legal action against US Income Partners for no reason other than Salerica, which holds a 49% ownership interest as a limited partner in Strawberry Fields Property Holdings, Ltd. (the "Partnership"), would rather US Income Partners not hold the majority 51% ownership interest (the "51% Interest") as the sole general partner of the Partnership. But US Income Partners does, and Salerica can hardly feign surprise now. Salerica

contracted for precisely that result when it executed the Limited Partnership Agreement of Strawberry Fields Property Holdings, Ltd. (the "<u>Partnership Agreement</u>").

2.      The Partnership Agreement was originally between Salerica, Amaryco, Inc. ("<u>Amaryco</u>," and, jointly with Salerica, the "<u>Limited Partners</u>") and Strawberry Fields General Partner, Inc. (the "<u>General Partner</u>"). Amaryco and the General Partner are Delaware corporations under the common control of a single Manager and Director: Fabrizio Lucchese ("<u>Mr. Luchesse</u>").

3.      Zimmerman is the Florida law firm that has served as primary counsel for the Partnership, Amaryco, and the General Partner since the formation of each in November of 2011.

4.      Pursuant to the Partnership Agreement, Amaryco was a limited partner, just like Salerica. However, Amaryco held a 50% ownership interest in the Partnership to Salerica's 49% ownership interest. The General Partner was the Partnership's sole general partner and held a 1% ownership interest.

5.      The Partnership Agreement gave the General Partner the exclusive authority to execute contracts on the Partnership's behalf and to dispose of its funds and property. However, the General Partner required the consent of the limited partner holding the majority ownership interest to transfer or assign its 1% ownership interest to a third party. Conversely, the Limited Partners required the

General Partner's consent before assigning their respective ownership interests to a third party.

6.      On February 15, 2018, Amaryco and South Beach Street Development, Ltd. ("South Beach" and, together with Amaryco, the "Borrower"), a third entity under Mr. Lucchese's exclusive control, borrowed $2 million dollars from US Income Partners pursuant to a promissory note (the "Note").

7.      On the same date, as security for the Note, Amaryco assigned to US Income Partners the entirety of its 50% interest in the Partnership   (the "LP Assignment"), and the General Partner assigned to US Income Partners the entirety of its 1% interest in the Partnership (the "GP Assignment," and, together with the LP Assignment, the "Assignments"). The LP Assignment was executed by Amaryco and by the Partnership, and the GP Assignment was executed by the General Partner and by the Partnership.

8.      Zimmerman served as counsel for the Partnership, Amaryco, South Beach, and the General Partner in connection with the Note and the Assignments. Before the contracts were executed, Zimmerman provided US Income Partners with an opinion letter confirming they were valid and binding on all parties.

9.      On March 1, 2019, the Borrower defaulted on the Note. US Income Partners provided a one-year extension for payment, but on March 1, 2020, the

Borrower failed to pay for a second time. US Income Partners has accordingly owned the 51% Interest ever since.

10.     Evidently, Salerica prefers a different result. On April 10, 2020, its counsel advised US Income Partners via letter of Salerica's opinion that US Income Partners holds no ownership interest in the Limited Partnership because the Assignments are supposedly void, fraudulent, and in violation of unnamed "securities laws." Salerica demanded that US Income Partners "conduct [it]self accordingly."

11.     US Income Partners now brings this action for a declaratory judgment that it owns the 51% Interest, pursuant to the Assignments, and is entitled to exercise the rights of a general partner and a limited partner, pursuant to the Partnership Agreement. In the alternative, should this Court conclude that the Assignments are invalid, US Income Partners brings claims against Zimmerman for fraudulent misrepresentation and/or negligent misrepresentation based upon the Opinion Letter's misrepresentations of material facts.

## **PARTIES**

12.     Plaintiff US Income Partners, LLC ("US Income Partners") is a New York limited liability company. The members of US Income Partners are citizens of New York.

13.     Defendant Salerica Investments, Inc. ("Salerica") is a Delaware corporation with its principal place of business at 163 Buttermill Avenue, Unit #1, Concord, Ontario, IAK 3X8.

14.     Defendant Zimmerman, Kiser & Sutcliffe, P.A. ("Zimmerman") is a Florida corporation with its principal place of business in Orlando, Florida, which is within the Middle District of Florida.

## JURISDICTION AND VENUE

15.     US Income Partners is a citizen of New York, Salerica is a citizen of Delaware and Canada, and Zimmerman is a citizen of Florida. Accordingly, the parties are completely diverse. As the amount in controversy exceeds $75,000, exclusive of interests and costs, this Court has jurisdiction under 28 U.S.C. § 1332(a)(1).

16.     An actual case or controversy exists between US Income Partners and Salerica, as Salerica has threatened US Income Partners with litigation and has asserted that US Income Partners has no ownership interest in the Partnership. These statements threaten to injure US Income Partners. Accordingly, this Court additionally has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. §§ 2201 (the "Declaratory Judgment Act").

17.     This Court has personal jurisdiction over Zimmerman because Zimmerman is a Florida corporation and maintains its principal place of business in

this judicial district. US Income Partners' claim against Zimmerman also arises from Zimmerman's conduct in this judicial district.

18.     This Court has personal jurisdiction over Salerica because the Partnership Agreement contains a forum-selection clause providing for the jurisdiction of this Court. US Income Partners' claim against Salerica also arises from Salerica's conduct in this judicial district.

19.     Venue in this district is proper pursuant to 28 U.S.C. § 1391 because Zimmerman is a resident of this district and the Partnership Agreement's forum-selection clause provides for venue in this judicial district. Defendants' improper conduct also occurred in, was directed from, and/or emanated from, in whole or in part, this judicial district

## FACTUAL ALLEGATIONS

**A. Zimmerman.**

20.     According to its website, the law firm of Zimmerman, Kiser & Sutcliffe, P.A. ("Zimmerman") is "one of the largest law firms in Central Florida" and maintains its office in Orlando, Florida.

21.     Zimmerman has a "business and corporate practice" group, where it states that its attorneys "regularly draft, negotiate and document a variety of commercial transactions for [] clients, including asset purchases and sales" and "contracts."

22.     N. Dwayne Gray, Jr. ("Mr. Gray") is a shareholder at Zimmerman and practices in the areas of "business and corporate" and real estate law, with a focus on commercial real estate transactions and financing.

23.     Upon information and belief, Zimmerman has been representing the Partnership, the General Partner, Amaryco, and South Beach since at least November of 2011, with Mr. Gray serving as lead counsel.

**B. The Partnership.**

24.     Strawberry Fields Property Holdings, Ltd. (the "Partnership") was formed on or about November 24, 2011.

25.     The Partnership is governed by the Limited Partnership Agreement of Strawberry Fields Property Holdings, Ltd. (the "Partnership Agreement") dated November 24, 2011. A true and correct copy of the Partnership Agreement is appended hereto as **Exhibit A**.

26.     Upon information and belief, Zimmerman drafted the Partnership Agreement.

27.     The Partnership's principal place of business is 315 E. Robinson St., Suite 600, Orlando, FL, at the offices of Zimmerman.[1]

---

[1] *See* Ex. A ("Partnership Agreement"), Section 1.3 ("Formation") at A-1; *see also id.*, Section 1.4 "Principal Place of Business") at A-2.

28.     The Partnership was formed "to own for investment purposes 45 condominium units in the Strawberry Fields condominium development in Ft. Pierce, Florida (the "Property") and to "operate, maintain, manage and sell the Property."[2]

### a. The Limited Partners.

29.     When the Partnership was formed on November 24, 2011, it had two limited partners: Salerica and Amaryco.

30.     Upon information and belief, Salerica has never been authorized to do business in Florida.

31.     Amaryco, Inc. ("Amaryco") is a Delaware corporation registered to do business in the State of Florida.[3] A true and correct copy of Amaryco's certificate of incorporation is appended hereto as **Exhibit B**.

32.     Amaryco was formed on or about November 22, 2011, when Mr. Gray filed its certificate of incorporation in Delaware.[4]

33.     Mr. Gray serves as Amaryco's registered agent in Florida.

34.     Amaryco's principal place of business is listed as 315 E. Robinson Street, Suite 600 Orlando, FL 32801, at the offices of Zimmerman.[5]

---

[2] *See* Ex. A ("Partnership Agreement"), Section 2.1 ("Business Purpose") at A-2.
[3] *See* Ex. A ("Partnership Agreement") at A-1.
[4] *See* Ex. B ("Amaryco Certificate of Incorporation") at 1.
[5] *See id.*

35.    At all times relevant to this dispute, Fabrizio Lucchese ("Mr. Lucchese") was the sole Officer and Director of Amaryco.

36.    Mr. Lucchese executed the Partnership Agreement as the President of Amaryco.[6]

37.    Pursuant to the Partnership Agreement, Salerica held (and still holds) a 49% ownership interest in the Partnership.[7] Conversely, Amaryco held a 50% ownership interest in the Partnership.[8]

**b. The General Partner.**

38.    When the Partnership was formed on November 24, 2011, it had one general partner: Strawberry Fields General Partner, Inc. (the "General Partner").

39.    The General Partner is a Delaware corporation. A true and correct copy of the General Partner's certificate of incorporation is appended hereto as **Exhibit C**.

40.    The General Partner was also formed on or about November 22, 2011, when Mr. Gray filed its certificate of incorporation in Delaware.[9]

41.    At all times relevant to this dispute, Mr. Lucchese was the sole Officer and Director of the General Partner.

---

[6] *See* Ex. A ("Partnership Agreement") at A-31.
[7] *See* Ex. A ("Partnership Agreement") at A-33 ("Capital Contributions and Percentage Interests").
[8] *See id.*
[9] *See* Ex. C ("General Partner Certificate of Incorporation") at 1.

42.    Accordingly, Mr. Lucchese also executed the Partnership Agreement as the President of the General Partner.[10]

43.    The General Partner held a 1% ownership interest in the Partnership.[11]

### c.  Powers of the Limited Partners.

44.    Pursuant to the Partnership Agreement, "[t]he Limited Partners shall not participate in or have any control over the management of the Partnership's business nor transact any business for the Partnership."[12]

45.    However, the Limited Partners were permitted to assign their respective interests in the Partnership with the General Partner's consent.[13]

46.    The Partnership Agreement states: "The Interests in the Partnership Interests owned by the Limited Partners have not been registered… under any federal or state securities laws, including the Florida Securities and Investor Protection Act" and "are sold in reliance on exemptions from federal and state securities laws."[14]

---

[10] *See* Ex. A ("Partnership Agreement") at A-31.
[11] *See* Ex. A ("Partnership Agreement") at A-33 ("Capital Contributions and Percentage Interests").
[12] *See* Ex. A ("Partnership Agreement"), Section 7.3 ("Limited Partners") at A-10.
[13] *See* Ex. A ("Partnership Agreement"), Section 12.2 ("Restrictions on Limited Partners").
[14] *See* Ex. A ("Partnership Agreement"), Article XI ("Limited Partnership Representations: Unregistered Securities") at A-15.

47.     The Partnership Agreement states that the Limited Partners may transfer, pledge, or assign their respective ownership interests if "an exemption from registrations is available under all applicable federal and state securities laws."[15]

48.     Similarly, "no assignee of a Limited Partner shall have the right to be admitted as an additional Limited Partner without the written consent of the General Partner, which consent may be withheld in its sole discretion."[16]

### d. Powers of the General Partner.

49.     Pursuant to the Partnership Agreement, "the General Partner shall have the sole and exclusive right to manage the business of the Partnership."[17]

50.     Specifically, "the General Partner has the full power on behalf of the Partnership and at the sole expense of the Partnership to [s]ell, transfer, assign, convey, lease, manage or otherwise dispose of or deal with all or any part of the Partnership's business or property."[18]

---

[15] *See* Ex. A ("Partnership Agreement"), Section 12.2 ("Restrictions on Limited Partners").

[16] *See* Ex. A ("Partnership Agreement"), Section 12.2 ("Restrictions on Limited Partners").

[17] *See* Ex. A ("Partnership Agreement"), Section 7.1 ("Management of the Partnership's Business") at A-8. The provision states that the General Partner's powers are "subject to Section 7.3" of the Partnership Agreement. *Id*. However, Section 7.3 does not limit the General Partner's powers at all and instead merely states: "The Limited Partners shall not participate in or have any control over the management of the Partnership's business nor transact any business for the Partnership." *Id*., Section 7.3 ("Limited Partners") at A-10.

[18] *See* Ex. A ("Partnership Agreement"), Section 7.2 ("Powers of the General Partner") at A-8.

51.     The General Partner also has the power to "[p]erform, or cause to be performed, all of the Partnership's obligations under any agreement to which the Partnership or any nominee of the Partnership is a party."[19]

52.     Accordingly, the Partnership Agreement is clear: "[a]ny person dealing with the Partnership or its property shall be entitled to rely fully upon any" "contract," "note, or other written instrument signed by the General Partner in the name of and/or on behalf of the Partnership."[20]

53.     The General Partner requires "the prior written consent of Limited Partners holding not less than a majority of the Percentage Interests" to "voluntarily sell, assign, transfer… or grant a security interest in" the General Partner's interest in the Partnership."[21]

## C. The $ 2 Million Loan from US Income Partners.

54.     By Winter of 2018, Mr. Lucchese was seeking a short-term loan of $2 million loan for the entities he controlled.

55.     In addition to the General Partner and Amaryco, Mr. Lucchese served as the sole Officer and Director of a third company: South Beach Street Development, Ltd. ("South Beach"), a Florida limited partnership.[22] In pursuit of

---

[19] *See* Ex. A ("Partnership Agreement"), Section 7.2 ("Powers of the General Partner") at A-8.
[20] *See* Ex. A ("Partnership Agreement"), Section 7.2 ("Powers of the General Partner") at A-10.
[21] *See* Ex. A ("Partnership Agreement"), Section 12.1 ("Restrictions on the General Partner") at A-16.
[22] On April 23, 2020, South Beach filed for Chapter 11 bankruptcy in the Middle District of Florida, Case 6:20-bk-02337-LVV.

additional funding, and with the help of the Partnership's longtime counsel, Zimmerman, Mr. Lucchese approached US Income Partners to negotiate the terms of a loan for South Beach and Amaryco.

### a.  US Income Partners.

56.    US Income Partners is a lender that provides financing solutions to borrowers throughout the real estate industry.

57.    US Income Partners specializes in providing short-term, hard asset-based loans, including bridge and mezzanine loans, to entities seeking to acquire, rehabilitate, or develop real estate. Such loans are typically repaid once a borrower can secure lower-interest funding.

### b. The Consents.

58.    US Income Partners was unwilling to loan $2 million to South Beach and Amaryco unless Mr. Lucchese agreed to certain conditions first.

59.    Specifically, as security for the note, South Beach would be required to grant US Income Partners a mortgage on a lucrative Florida property it owned, while Amaryco and the General Partner would be required to pledge and assign their respective interests in the Partnership to US Income Partners. The Partnership would also be required to execute those pledges and assignments.

60.     Once Mr. Lucchese agreed to US Income Partners' conditions, Zimmerman ensured that the Partnership, the General Partner, and Amaryco complied with the Partnership Agreement's requirements.

61.     To that end, on February 14, 2018, as the sole member of the General Partner's Board of Directors, Mr. Lucchese executed a Written Consent in Lieu of Meeting on behalf of the General Partner (the "GP Consent"). Appended hereto as **Exhibit D** is a true and correct copy of the GP Consent.

62.     The GP Consent stated that the General Partner was authorized to pledge its general partner interest in the Limited Partnership as additional security for the $2 million loan from US Income Partners.[23]

63.     On February 14, 2018, as the sole member of Amaryco's Board of Directors, Mr. Lucchese also executed a Unanimous Written Consent of Board of Directors in Lieu of Meeting on behalf of Amaryco (the "LP Consent"). Appended hereto as **Exhibit E** is a true and correct copy of the LP Consent.

64.     The LP Consent stated that Amaryco was authorized to pledge limited partner interest in the Limited Partnership as additional security for the $2 million loan from US Income Partners.[24]

---

[23] *See* Ex. D ("GP Consent") at 1.
[24] *See* Ex. E ("LP Consent") at 1.

65.   Finally, on February 14, 2018, the Limited Partnership delivered a Written Consent of Partners in Lieu of Meeting (the "Partnership Consent"). Appended hereto as **Exhibit F** is a true and correct copy of the Partnership Consent.

66.   The Partnership Consent stated that the Partnership ratified Amaryco's pledge and assignment of its limited partner interest and made clear that Mr. Lucchese was authorized to act "on behalf of the General Partner," "in its capacity as general partner of the Partnership."[25]

67.   The Partnership Consent was clear: "all agreements entered into, actions taken, and statements made by any… agent or officer of the General Partner on behalf of the Partnership" "with respect to or in connection with the Partnership" or "the transactions contemplated" by the agreements, including the Note and Assignments, "are hereby ratified, confirmed and approved in all respects."[26]

68.   The Partnership Consent, the GP Consent, and the LP Consent all contain the same statement: Zimmerman shall be notified "if the resolutions contained herein are not true, correct and complete or are misleading as of the date of the execution" of the Note and "any and all other documents, instruments, and agreements in connection with" the same.[27]

---

[25] *See* Ex. F ("Partnership Consent") at 1.
[26] *See* Ex. F ("Partnership Consent") at 2.
[27] *See* Ex. F ("Partnership Consent") at 2; Ex. D ("GP Consent") at 2; Ex. E ("LP Consent") at 2.

### c. The Note.[28]

69.     After Zimmerman confirmed in the Opinion Letter that the loan was authorized by the Partnership and the Partnership Agreement, on February 15, 2018, US Income Partners loaned $2 million to Amaryco and South Beach (jointly, the "Borrower"), pursuant to a Promissory Note (the "Note"). Appended hereto as **Exhibit G** is a true and correct copy of the Note.

70.     The Note required the Borrower to pay interest at the rate of 16% per annum on the $2 million principal balance beginning on April 1, 2018 until the Note was paid in full.[29]

71.     The Note provided that the entire unpaid principal balance and any unpaid accrued interest was due and payable on March 1, 2019.[30]

72.     Just as planned, as security for the Note, on February 15, 2018, South Beach also executed and delivered to US Income Partners a Mortgage, Security Agreement and Assignment of Leases, Rents, and Profits (the "Mortgage") granting

---

[28] The Note is subject of a separate, pending legal action brought by US Income Partners against the Limited Partners. As the Limited Partners are not named in the instant suit, US Income Partners addresses the Note only for the purposes of providing this Court with the relevant factual background from which US Income Partners' claims against Salerica and Zimmerman arise.
[29] *See* Ex. G ("Note") at ¶ 5.
[30] *See* Ex. G ("Note") at ¶ 7.

a mortgage to US Income Partners on certain property owned by South Beach in Volusia County, Florida.[31]

**d. The Assignments.**

73.    Just as planned, as additional security for the Note, on February 15, 2018, Amaryco also assigned to US Income Partners the entirety of its 50% interest in the Limited Partnership (the "LP Assignment"), and the General Partner assigned to US Income Partners the entirety of its 1% interest in the Limited Partnership (the "GP Assignment," and, together with the LP Assignment, the "Assignments"). Appended hereto as **Exhibits H & I**, respectively, are true and correct copies of the LP Assignment and the GP Assignment.

74.    Mr. Lucchese executed the LP Assignment as the President of Amaryco and executed the GP Assignment as the President of the General Partner.

75.    However, both Assignments contained separate signature blocks to be executed by the Partnership. Accordingly, the General Partner executed both Assignments on behalf of the Partnership. [32]

---

[31] Like the Note, the Mortgage is subject of a separate, pending legal action brought by US Income Partners. Accordingly, US Income Partners addresses the Mortgage only to provide this Court with the relevant factual background for the instant suit.
[32] *See* Exs. H & I ("Assignments") at 8.

76.    The Assignments contain almost the same language. Pursuant to the Assignments, Amaryco and the General Partner are in default if "[t]here occurs one or more of the Events of Default specified in the Note."[33]

77.    Amaryco and the General Partner are also in default if they, or if the Partnership itself, "fails to perform or observe any term, covenant, condition or agreement required to be performed or observed" under the Assignment.[34]

78.    If an Event of Default occurs under the Note, the LP Assignment grants US Income Partners the right to exercise all "contract and other rights of [Amaryco] arising out of the Partnership Agreement or existing by virtue of the Limited Partnership Interest" at its option, by providing five (5) days written notice to the Partnership.[35]

79.    Similarly, if an Event of Default occurs under the Note, the GP Assignment grants US Income Partners the right to exercise all "contract and other rights of [the General Partner] arising out of the Partnership Agreement or existing by virtue of the Limited Partnership Interest" at its option, by providing five (5) days written notice to the Partnership.[36]

---

[33] *See* Exs. H & I ("Assignments") at ¶ 4(a).
[34] *See* Ex. H& I ("Assignments") at ¶ 4(c).
[35] *See* Ex. H ("LP Assignment") at 8.
[36] *See* Ex. H ("GP Assignment") at 8.

### D. The Opinion Letter.

80.     On February 15, 2018, the same day the Note and Assignments were executed, Zimmerman provided US Income Partners with a formal opinion letter (the "Opinion Letter"). Appended hereto as **Exhibit J** is a true and correct copies of the Opinion Letter.

81.     The Opinion Letter is addressed to US Income Partners, states that "the opinions set forth in this letter may he relied upon solely by the addressee and its counsel,"[37] and is executed by Zimmerman.

82.     The Opinion Letter confirms that Zimmerman acted as counsel to the Borrower in connection with the Note and as counsel for the Partnership, the General Partner, and Amaryco in connection with the Assignments.[38]

83.     The Opinion Letter states that Zimmerman reviewed the Note, the Assignments, the Consents, and the various organizational documents and corporate bylaws of Amaryco, the General Partner, and the Partnership (the "Loan Documents").[39] After reviewing the Loan Documents, Zimmerman concluded that the Note and Assignments were "valid and binding obligations" of the Partnership, the General Partner, and Amaryco and "enforceable against" those entities.[40]

---

[37] *See* Ex. J ("Opinion Letter") at 1.
[38] *See* Ex. J ("Opinion Letter") at 1.
[39] *See* Ex. J ("Opinion Letter") at pp. 1-2.
[40] *See* Ex. J ("Opinion Letter") at 2.

84.     The Opinion Letter specifically confirms that, after reviewing the Partnership Agreement, Zimmerman concluded that "the execution and delivery" of the Assignments by the Partnership, Amaryco, and the General Partner "do not" and "will not…. *to our actual knowledge*, conflict with or violate or result in a breach" of the Partnership Agreement.[41]

### E. Amaryco and South Beach Default on the Note, and Amaryco and the General Partner Default on the Assignments.

85.     The Borrower defaulted on the Note on numerous occasions, beginning in August of 2018, by, among other things, failing to make the required monthly interest payments.

86.     US Income Partners granted the Borrower a one-year extension to pay the Note, until March 1, 2020, but the Borrower failed to pay on that date, as well.

87.     As the Borrower has been in default under the Note since March 1, 2020, the General Partner and Amaryco have also been in default under the Assignments since that date.[42]

88.     Accordingly, since March 1, 2020, US Income Partners has owned Amaryco's 50% ownership interest and the General Partner's 1% ownership interest in the Limited Partnership (the "51% Interest").

---

[41] *See* Ex. J ("Opinion Letter") at 3.
[42] *See* Exs. H & I ("Assignments") at ¶ 4(a).

89.     Pursuant to the GP Assignment, US Income Partners now has all "contract and other rights of [the General Partner] arising out of the Partnership Agreement or existing by virtue of the Limited Partnership Interest" to exercise at its option, by providing five (5) days written notice to the Partnership.[43]

90.     As Amaryco is no longer a limited partner, US Income Partners is only required to provide Salerica, as the entity with a 49% ownership interest in the Partnership, with five days notice before US Income Partners exercises its "full power on behalf of the Partnership and at the sole expense of the Partnership to [s]ell, transfer, assign, convey, lease, manage or otherwise dispose of or deal with all or any part of the Partnership's business or property."[44] Evidently, Salerica disagrees.

### F. Salerica Contests US Income Partners' Interest in the Partnership and Threatens Litigation.

91.     On April 10, 2020, counsel for Salerica advised US Income Partners via letter of its client's opinion that US Income Partners has no valid ownership interest in the Partnership, much less the 51% Interest, to sell.

92.     Salerica's counsel additionally threatened legal action against US Income Partners on the grounds that the Assignments supposedly violate unnamed "securities laws" and the Partnership Agreement.

---

[43] *See* Ex. H ("GP Assignment") at 8.
[44] *See* Ex. A ("Partnership Agreement"), Section 7.2 ("Powers of the General Partner") at A-8.

93.    By Salerica's logic, the GP Assignment is invalid because "Salerica never provided any consent, let alone written consent," for the General Partner to assign its interest in the Partnership.

94.    However, as made clear above, the General Partner was not required to obtain anything other than "the prior written consent of Limited Partners holding not less than a majority of the Percentage Interests" to "voluntarily sell, assign, transfer… or grant a security interest in" the General Partner's interest in the Partnership.[45]

95.    As Amaryco owned a 50% ownership interest in the Partnership to Salerica's 49% interest when the GP Assignment was executed, and the General Partner had Amaryco's prior written consent before its execution, the GP Assignment is valid.

96.    According to Salerica's counsel, the LP Assignment is invalid because the Partnership Agreement prohibits the pledge of any limited partnership interest in the absence of "an effective registration statement or an applicable exemption together with an opinion letter that the pledge is subject to such an exemption," and Amaryco's counsel never drafted an  "opinion letter" "justifying" the LP Assignment.

---

[45] See Ex. A ("Partnership Agreement"), Section 12.1 ("Changes in Partners") at A-16.

97.     However, the Opinion Letter is clear. After examining the Partnership Agreement, Zimmerman determined that Amaryco's execution, delivery, and performance of the LP Assignment were "duly authorized" and the LP Assignment was "valid and binding" on the Partnership.[46]

98.     Further, Section 11 of the Partnership Agreement requires "the transferring limited partner" to provide an "opinion letter" to the General Partner alone— and not to Salerica.[47]

99.     Additionally, the Partnership Agreement states that, at the time of its execution, Amaryco's interest in the Partnership "ha[d] not been registered… under any federal or state securities laws, including the Florida Securities and Investor Protection Act" and were "sold in reliance on exemptions from federal and state securities laws."[48]

100.    Finally, both Assignments were executed by the General Partner on behalf of the Partnership itself, and the General Partner has the power to "[p]erform, or cause to be performed, all of the Partnership's obligations under any agreement to which the Partnership… is a party."[49] Under the Partnership Agreement, US

---

[46] *See* Ex. J ("Opinion Letter") at 1.
[47] *See* Ex. A ("Partnership Agreement"), Article XI ("Limited Partnership Representations: Unrepresented Securities") at A-15.
[48] *See* Ex. A ("Partnership Agreement"), Article XI ("Limited Partnership Representations: Unrepresented Securities") at A-15.
[49] *See* Ex. A ("Partnership Agreement"), Section 7.2 ("Powers of the General Partner") at A-8.

Income Partners is entitled to rely fully upon the Assignments as contracts" signed by the General Partner in the name of and/or on behalf of the Partnership."[50]

## COUNT I
## DECLARATORY JUDGMENT
### (Against Salerica)

101.   US Income Partners repeats and incorporates by reference all allegations set forth in Paragraphs 1 through 100.

102.   The Assignments are valid, binding contracts between the Partnership, Amaryco, the General Partner, and US Income Partners.

103.   Pursuant to the GP Assignment, the General Partner assigned to US Income Partners its rights as a general partner under the Partnership Agreement and its 1% ownership interest in the Partnership as security for payment of the Note.

104.   Pursuant to the LP Assignment, Amaryco assigned to US Income Partners its rights as a limited partner under the Partnership Agreement and its 50% ownership interest in the Partnership as security for payment of the Note.

105.   Salerica has threatened US Income Partners with litigation and has asserted that US Income Partners has no ownership interest in the Partnership.

106.   There is a bona fide, actual, present, and practical need for a declaration that the Assignments are valid so that US Income Partners may enforce its contractual rights under the Partnership Agreement.

---

[50] *See* Ex. A ("Partnership Agreement"), Section 7.2 ("Powers of the General Partner") at A-10.

107. US Income Partners is entitled to a declaratory judgment that it owns a 51% ownership interest in the Limited Partnership and has the rights of a general partner and limited partner under the Partnership Agreement.

### COUNT II
### (IN THE ALTERNATIVE)
### FRAUDULENT MISREPRESENTATION
### (Against Zimmerman)

108. US Income Partners repeats and incorporates by reference all allegations set forth in Paragraphs 1 through 107.

109. Zimmerman served as Amaryco's primary counsel from its formation on November 22, 2011, when Zimmerman filed Amaryco's certificate of incorporation, through the present date.

110. Zimmerman served as the General Partner's primary counsel from its formation on November 22, 2011, when Zimmerman filed the General Partner's certificate of incorporation, through the present date.

111. Zimmerman served as the Partnership's primary counsel, from its formation on November 24, 2011 through the present date.

112. Because Zimmerman has represented the Partnership, Amaryco, and the General Partner since November of 2011, including when the Partnership Agreement was drafted, negotiated, and executed, Zimmerman had actual knowledge of the factual statements and representations contained within the Partnership Agreement.

113.   Zimmerman represented the Partnership, Amaryco, and the General Partner in connection with the Note and the Assignments.

114.   On February 15, 2018, the same day US Income Partners executed the Note and the Partnership, Amaryco, and the General Partner executed the Assignments, Zimmerman provided US Income Partners with the Opinion Letter.

115.   The Opinion Letter lists thirty-eight (38) documents on which Zimmerman relied to reach its statements, in addition to Zimmerman's self-described "actual knowledge" of the facts.

116.   If the Assignments are not valid, binding, and enforceable contracts, then Zimmerman made the following false statements of material fact in the Opinion Letter, knowing they were false:

a.   Zimmerman stated that "the execution and delivery" of the Loan Documents, including the Note and Assignments, by the Partnership, Amaryco, and the General Partner "do not" and "will not…. to our actual knowledge, conflict with or violate or result in a breach of any of the provisions" of the Partnership Agreement.

b.   Zimmerman also stated that the Assignments "do not" and "will not… to our actual knowledge," "conflict with or violate any law, rule, regulation, or ordinance" applicable to the Partnership, Amaryco, or the General Partner.

117.   Zimmerman made those false statements with the intention that US Income Partners would act on them and to induce US Income Partners to execute the Note.

118.   As a result of Zimmerman's false statements, US Income Partners has suffered damages in an amount not less than $2.5 million.

## COUNT III
## (IN THE ALTERNATIVE)
## NEGLIGENT MISREPRESENTATION
### (Against Zimmerman)

119.   US Income Partners repeats and incorporates by reference all allegations set forth in Paragraphs 1 through 118.

120.   In the alternative, Zimmerman believed that the representations contained within the Opinion Letter and the Partnership Agreement were true, when they were in fact false.

121.   As longtime counsel for the Partnership, Amaryco, and the General Partner, and as experienced corporate attorneys performing due diligence, Zimmerman should have known the representations were false.

122.   Zimmerman supplied the information in the Opinion Letter for the guidance of US Income Partners in its business transactions with Zimmerman's clients and to induce US Income Partners to execute the Note.

123.   US Income Partners justifiably relied on the representations contained within the Opinion Letter, as the Opinion Letter was authored by the longtime

counsel for the Partnership, Amaryco, and the General Partner and Zimmerman represented that it had "actual knowledge" of the facts contained therein.

124.   As a result of its justifiable reliance, US Income Partners has suffered damages in an amount not less than $2.5 million.

**COUNT IV**
**(IN THE ALTERNATIVE)**
**<u>BREACH OF CONTRACT</u>**
**(Third Party Beneficiary, Against Zimmerman)**

125.   US Income Partners repeats and incorporates by reference all allegations set forth in Paragraphs 1 through 124.

126.   If the Assignments are determined not to be binding, enforceable contracts, the Opinion Letter is still a valid, binding, and enforceable contract between Zimmerman and the Partnership, Amaryco, and the General Partner, supported by the consideration of the mutual promises and undertakings expressed therein.

127.   Zimmerman entered into the Opinion Letter with the Partnership, Amaryco, and the General Partner with the collective intent that the Opinion Letter would primarily and directly benefit US Income Partners.

128.   Zimmerman breached the Opinion Letter by failing to ensure that the Assignments were valid and binding contracts.

129.   As a result of Zimmerman's breach of the Opinion Letter, US Income Partners has suffered damages in an amount not less than $2.5 million.

## **PRAYER FOR RELIEF**

WHEREFORE, US Income Partners demands judgment against Salerica and

requests:

(a) On Count I (Declaratory Judgment) – (1) a declaratory judgment that US Income Partners owns a 51% ownership interest in the Partnership and may exercise all the rights of a limited partner and a general partner under the Partnership Agreement; and (2) any further relief as this Court deems just and proper.

In the alternative, US Income Partners demands judgment against Zimmerman and requests:

(b) On Count II (Fraudulent Misrepresentation) – (1) compensatory damages in an amount to be proven at trial but in no event less than $2.5 million; (2) punitive damages in an amount to be proven at trial; and (3) any further relief as this Court deems just and proper.

(c) On Count III (Negligent Misrepresentation) – (1) compensatory damages in an amount to be proven at trial but in no event less than $2.5 million; and (2) any further relief as this Court deems just and proper.

(d) On Count IV (Breach of Contract) – (1) compensatory damages in an amount to be proven at trial but in no event less than $2.5 million; and (2) any further relief as this Court deems just and proper.

Dated:  May 26, 2020.

Respectfully submitted,

By: /s/ *Ryan B. Hobbs*
Ryan B. Hobbs, Esq.
Fla. Bar No. 44179
**BROOKS, LEBOEUF, FOSTER,**
  **GWARTNEY, LEACE & HOBBS, P.A.**
909 East Park Avenue
Tallahassee, Florida 32301
(850) 222-2000 / (850) 222-9757 (fax)

rhobbs@tallahasseeattorneys.com
jeanetta@tallahasseeattorneys.com

*Attorneys for Plaintiff*